# APPENDIX.

## NOTES OF CASES NOT OTHERWISE REPORTED.

### Moore v. Mayfield.

*Appeal from Mitchell District Court — Friday, January 25.*

FORECLOSURE OF TITLE BOND: EQUITY.

This is an action in equity to foreclose a bond for title, and subject the real estate described therein to sale for the satisfaction of the purchase price alleged to be still unpaid. The plaintiff is the assignee of Lewis Conly, the vendor. The land is the south-east quarter of section eighteen, and six and two-third acres in section seventeen, township ninety-seven, range seventeen. The cause was sent to a referee who took the testimony and reported the facts he found and his conclusions of law thereon, adverse to plaintiff. Judgment accordingly. See the opinion for the facts. The plaintiff appeals.

*H. O. Pratt* for the appellant—*D. W. Poindexter* and *S. M. Atherton* for the appellee.

Cole, J. — On the 1st day of April, 1857, Lewis Conly was the owner of the land in controversy, and on that day he sold it to the defendant for the agreed price of $1,212; for which price defendant indorsed to Conly a note for $1,000, made by one John C. Bishop to said Mayfield and one Jones, dated March 26, 1856, and payable one year after date, and defendant also executed to said Conly or bearer his own note for $212, payable three years after its date (April 1, 1857), with ten per cent interest. And Conly at the same time executed and delivered to Mayfield his bond for the title to said land. This bond is lost, and its precise terms is the main point in controversy in this action.

On the 5th day of May, 1857, Conly having obtained Mayfield's consent that he might mortgage the quarter section sold him, to secure the payment of $200 he was about to borrow of one Baldwin, did on that day borrow said sum of said Baldwin and execute to him a deed, absolute in form, though in fact a mortgage, upon the whole of said land. Conly was in actual possession of the quarter section, by residence thereon, at the time of the sale to Conly, and so continued up to the 20th day of May thereafter (1857), when such possession was delivered to Mayfield, who has been in such actual possession ever since.

On the 15th day of July, 1858, Baldwin and wife conveyed all said real estate to the plaintiff by deed of general warranty, the recited consideration

being $900. A mistake in the description of the land in this deed was corrected by a subsequent deed. In March, 1859, Conly went to the gold mines in the territories and left his wife and family in the care of his father, and also left with them his property, including the note made by Mayfield to him or bearer in part for the land. He was absent about a year, and during that time his father, without his authority, sold and delivered the note to a third person, who afterward sold and delivered it to another, from whom Mayfield obtained it. After Conly's return he learned of this sale of the note, but never made any efforts to reclaim it or any offer to return the amount received for it, which had been applied to the support of his family during his absence.

In April, 1865, the plaintiff, by various transfers and assignments, which are not necessary to state here, became possessed of all rights and title and interest of the said Conly in and to the land sold to Mayfield and to the said notes given by Mayfield to Conly therefor. Neither note was delivered, the Bishop note having been lost some time in 1863. On the 4th day of May, 1857, Bishop paid to Conly $232 on said note; and shortly thereafter, the time not being stated, he paid $10 more thereon. No other payments have been made on it, nor has any part of the money obtained by Conly of Baldwin been re-paid to any one.

It is claimed by the defendant Mayfield, and he so testifies, that the bond for title given by Conly to him bound Conly to make him a deed for said land on the 5th day of June, 1857, or just two months after it was given; while the plaintiff claims, and Conly so testifies, that by the express terms of the bond Conly was only bound to make the deed when the Bishop note was paid. The testimony is quite voluminous, and it is only necessary for us to state that in our opinion it sustains the claim of the plaintiff. Besides, the rules of equity applied to the conceded facts of the case bring us to the same result. The note was given for the land; it was indorsed after due by Mayfield to Conly; Bishop's failure to pay was fully, duly and well known to Mayfield, and he joined in the fruitless efforts to obtain its payment; the land is worth over $3,000, and Conly or his assigns have never received but the $242 paid by Bishop, as above stated, for it. Surely Mayfield ought to pay for the land before he shall receive the conveyance of it, as he prays in his answer.

The plaintiff, however, stands in no better position than Conly himself would stand. Conly having suffered the note made by Mayfield to him to be transferred to third persons without effort to reclaim it or restore the consideration he has by his family received the benefit of, cannot now compel Mayfield to pay it to him. Conly would be required to remove the incumbrance created by the mortgage or conveyance to Baldwin, before he could compel Mayfield to pay the consideration for the land represented by the Bishop note. Mayfield was in actual possession when plaintiff obtained his deed from Baldwin, and the latter had actual notice when he took his deed or mortgage from Conly.

It follows that the plaintiff is entitled to a judgment for the amount of the Bishop note with interest, less the credit of $242, as of May 4, 1857, and to a foreclosure. The first money paid by defendant or realized from the

foreclosure sale will be applied to the discharge of the Baldwin mortgage. Upon payment of the whole of the judgment the defendant's title will be made perfect and quieted in him, free from all liens or claims held by plaintiff, his grantors and assigns; and in case of foreclosure sale, the purchaser will have such title

Reversed.